IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID G. PFLUM,

                    Plaintiff,

         Vs.                                              No. 99-4170-SAC

UNITED STATES OF AMERICA,

                    Defendant.

MEMORANDUM AND ORDER

         The case comes before the court on the motions for summary

judgment filed by the plaintiff David G. Pflum (Dk. 69) and by the defendant

United States of America (Dk. 102).  Because both motions essentially

raise the same issues, the court will decide the motions together and

address the issues and arguments only once.[1]

**SUMMARY JUDGMENT STANDARDS**

         A court grants a motion for summary judgment under Rule 56 of

the Federal Rules of Civil Procedure if a genuine issue of material fact

---

[1]The court denies the plaintiff's motion on its face as procedurally
deficient for not having a meaningfully complete statement of facts
sustained by a proper summary judgment record.  The court, however,
shall indulge the plaintiff and consider the arguments and authorities in his
motion to have been made also in opposition to the defendant's motion.

does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In applying this standard, "[a]ll inferences arising from the record before us must be drawn and indulged in favor of the [nonmovant]." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003) (internal quotation marks omitted). "Credibility determinations [and] the weighing of the evidence . . . are jury functions, not those of a judge." *Id.* at 1216 (internal quotation marks omitted). Nevertheless, "the nonmovant must establish, at a minimum, 'an inference of the existence of each element essential to [her] case.'" *Croy v. COBE Laboratories, Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003) (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir.

2

1994)).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992). If this burden is met, the nonmovant must "set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). (citations omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995). Only admissible evidence may be reviewed and considered in a summary judgment proceeding. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The nonmovant's "evidence, including testimony, must be based on more than

3

mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The summary judgment inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Even so, a pro se litigant is not exempt from following the same rules of procedure as any other litigant.  *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993).  "At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d at 1110.  The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156,

4

1159 (10th Cir. 1991).  Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F .3d 1170, 1173-74 (10th Cir. 1997).

## PLAINTIFF'S CLAIMS

The plaintiff filed this action pursuant to 26 U.S.C. § 7431 seeking to recover for unauthorized disclosure of return information in violation of 26 U.S.C. § 6103.  In the original complaint, he alleged IRS special agents unlawfully disclosed the nature of their investigation through business cards having the identifier, "Criminal Investigation Division," which the agents personally furnished when they served certain summonses in Kansas and which the agents also attached to other summonses served out-of-state.  He also alleged unauthorized disclosures of affiliation with the "Criminal Investigation Division" on certified mail return receipts.  He alleged unauthorized disclosures of a criminal investigation against him during conversations with local law enforcement officers and persons who had been summonsed or who represented entities which had been summonsed.  He further alleged wrongful disclosures in court filings opposing his motion to quash.  The court granted the government's motion for judgment on the pleadings concerning the allegation of wrongful

disclosure in a judicial proceeding.  (Dk. 50).  Finally, the plaintiff filed a supplemental complaint adding the allegation that during interviews of Clifford McCain and Ben Chavez the special agents wrongfully disclosed return information that consisted of documents obtained from financial institutions.

**STATEMENT OF UNCONTROVERTED FACTS**

1.  On March 19, 1999, the Internal Revenue Service's Criminal Investigation Division ("CID") began an investigation to determine whether David G. Pflum ("Pflum") had criminally violated the Internal Revenue Code during the years of 1994 through 1998.  Special Agent Laurence Schmidt with CID was in charge of the investigation, and Special Agent Henry Herron with the CID was assigned to assist.

2.  On March 23, 1999, Agents Schmidt and Herron went to Pflum's place of business and met with him.  They identified themselves, explained that Pflum was the subject of a criminal investigation, read Pflum his rights, and asked to interview him.  Pflum refused to be interviewed at that time but made an appointment to be interviewed at a field office six days later. Pflum subsequently called the Agents and canceled the scheduled interview.

6

3.   Prior to the March 23rd contact with Pflum, the Agents visited with area law enforcement officers identifying themselves, notifying the officers that they would be doing investigative work in the community, and asking whether Pflum or anyone else in the community posed a potential threat to their safety while the Agents were present in the area.   The agents did not tell the officers that they were criminally investigating Pflum or that such an investigation existed.

4.   From experience, Agent Schmidt realized certain financial documents from banks and other third parties would be necessary in order to conduct an examination of Pflum's tax liability.   Therefore, he issued a number of administrative summonses on third parties who had financial dealings with Pflum.

5.   On March 23, 1999, Agents Schmidt and Herron personally served administrative summons on First National Bank of Clifton, Kaw Valley State Bank in Wamego, and St. Mary's State Bank in St. Mary's. The summonses requested records on Pflum's bank accounts for the years in question and directed the banks to produce the requested records on April 19, 1999.   The Agents identified themselves to the bank representatives as CID Special Agents and displayed their badges and

pocket commissions which confirmed their affiliation with CID.  The Agents, however, did not tell the bank representatives that they were conducting a criminal investigation of Pflum.

6.  The manner in which the Agents identified themselves to these bank representatives during the Pflum investigation followed the requirements specified within the Internal Revenue Manual ("IRM")[2] and subsequent CID policy statements[3] on third-party contacts.

7.  As part of the investigation, Agent Schmidt issued administrative summonses on out-of-state third parties for accounting records and other documents of financial transactions involving Pflum which were otherwise

_____

[2]"Whether or not a Form 2246 has been used to arrange for an interview or an official matter, a special agent will properly identify himself/herself by producing his/her pocket commission at the time of the interview."  IRM § 977(11).1(4).

[3]A policy memorandum dated April 5, 1999, and issued by the Director of National Operations Division (Criminal Investigations) for the Department of Treasury provides:
> "When contacting third parties, special agents will continue to identify themselves as special agents with the Internal Revenue Service, Criminal Investigation Division, and utilize their credentials and enforcement badges.  Agents are to refrain, however, from making any **affirmative** statement that their investigation is of a **criminal** nature except in those rare instances where the disclosure is necessary to obtain information because the third party has expressed a strong disinclination to cooperate with anything other than a criminal investigation."

(Dk. 102-3, Decl. of Laurence Schmidt, Ex. 2) (emphasis in original).

unavailable as Pflum was not cooperating with the investigation.  Agent
Schmidt did not personally serve these summonses but attached his
business card so that the summonsed parties could contact him with any
questions.  The business card identified Schmidt as an IRS special agent in
the CID.  The business card disclosed no more information than what he
had disclosed in personally serving the earlier summonses.  Recipients of
the out-of-state summonses included:  Charles Balassi, C.P.A. in Vallejo,
California; North American Mortgage Company in Santa Rosa, California;
Bank of American National Trust and Savings Association in Las Vegas,
Nevada; and Northern Nevada Title Company.  Agent Schmidt
subsequently received telephone inquiries from Charles Balassi and from
representatives of several financial institutions who had been served with
summonses.  During his telephone conversations, Agent Schmidt did not
tell them that Pflum was under criminal investigation.

8.  Agent Schmidt's use of business cards to provide contact
information to summonsed parties was authorized by the IRM.[4]

9.  Agent Schmidt sent Pflum notices of all summonses by certified

---

[4]Special agents may used contact cards "as a means of putting
taxpayers or third parties on notice as to the proper office to contact
regarding an official internal revenue matter."  IRM § 977(11).1(1).

mail, but he does not recall using certified mail for any other purpose during the Pflum investigation.  The certified mail receipts identified Agent Schmidt as part of the Criminal Investigation division in order to insure that he would receive all of his mail being routed through the IRS system.

10.  In February 2001, the Chief of the IRS Criminal Investigation sent CID Special Agents a written policy memorandum on the uniform procedures for officers identifying themselves to subjects or witnesses in investigations:

> **Third Party Contacts**
> In general, the new policy authorizes special agents to display their badges and credentials, make an affirmative statement that they are special agents with the Internal Revenue Service, Criminal Investigation and identify the person under investigation when making third party contacts.  Below is a sample introduction.
>> Mr. or Mrs. XXXXXX my name is John Doe, I am a special agent Internal Revenue Service, Criminal Investigation (display credentials for examination and introduce any other officials present).  I am conducting an investigation of Mr. or Mrs. XXXXX and I would like to ask you some questions regarding this matter.
> **Notice, in the above example the agent made no affirmative statement characterizing the investigation as being "criminal" in nature.**  Agents will refrain from characterizing investigations as "criminal" except in those instances where this disclosure is necessary to obtain the information sought.

(Dk. 102-3, Decl. of Laurence Schmidt, Ex. 3, p. 2) (emphasis in original).

11.  In September of 2001, Agents Schmidt and Herron separately

10

interviewed, Clifford McCain and Ben Chavez,  two business associates of
Pflum.  Before each interview, they identified themselves as special agents
with IRS's Criminal Investigations division but did not say they were
conducting a criminal investigation of Pflum.  During the interviews, the
agents used records and documents to ask questions about specific
financial transactions in order to determine the nature of the transactions
and Pflum's income tax liabilities for the years in question.  Both business
associates agreed to provide copies of additional records, and Agent
Herron left his business card with them so that the records would be sent to
the correct address.

As set forth in the Special agents' Affidavits, they did not tell
any of the third parties that they were conducting a criminal investigation of
Pflum.  The plaintiff argues in his memorandum opposing the defendant's
motion that "[w]hether the agents in fact orally communicated to third
persons that Mr. Pflum was under a criminal investigation is a material fact
that is in dispute in this case.  (See affidavits in attachment A.)"  (Dk. 107,
p. 2).  The plaintiff did not file any attachments with his memorandum.
Thus, the plaintiff's conclusory assertion of a material factual dispute does
not create one.  He has not carried his burden of setting forth specific facts

that would be admissible in evidence and that are referenced to a proper

summary judgment record.  The defendant's statements of fact properly

sustained by the agents' declarations stand uncontroverted on this point.

The court finds no disputes of material fact as to prevent summary

judgment here.

**APPLICABLE STATUTES**

Section 7431 of the Internal Revenue Code creates a private

cause of action against the United States if a federal officer or employee

knowingly or negligently violates the confidentiality provisions of § 6103,

which state in relevant part:

> Returns and return information shall be confidential, and except as
> authorized by this title—(1) no officer or employee of the United
> States, . . . , shall disclose any return or return information obtained
> by him in any manner in connection with his service as such an
> officer or an employee or otherwise or under the provisions of this
> section.

26 U.S.C. § 6103(a).  The statutory definition of "return information"

encompasses "a taxpayer's identity, . . ., payments, . . ., [and] whether the

taxpayer's return was, is being, or will be examined or subject to other

investigation . . . ."  26 U.S.C. §  6103(b).  In short, this section "prohibits

disclosure of tax return information unless expressly authorized by an

exception."  *Rice v. United States*, 166 F.3d 1088, 1090 (10th Cir.), *cert.*

12

*denied*, 528 U.S. 933 (1999).

There are "numerous exceptions to § 6103's general prohibition."  *Id*.  Based upon the parties' arguments, relevant here is the safe harbor exception at § 6103(k)(6) for agents performing investigations:

> An internal revenue officer or employee . . . may in connection with his official duties relating to any . . . criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title.  Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

Because authorized disclosures must be made only pursuant to the implementing regulations, the Secretary has promulgated the same.  26 C.F.R. § 301.6103(k)(6)–1(a) & (b).

Subsection (b) to sec 7431 establishes a liability exception for a federal agent's disclosure that "results from a good faith, but erroneous interpretation of section 5103."  26 U.S.C. §  7431(b).  In the event of liability, § 7431(c) allows for an award of statutory or actual damages, punitive damages, and attorneys' fees.

**ANALYSIS AND DISCUSSION**

For purposes of analysis, the plaintiff's claims can be grouped

13

as follows:  (1) the unlawful disclosure of the criminal nature of the investigation to third parties (a) by giving business cards with the CID identifier, (b) by using return addresses with the CID identifier on certified mail return receipts, and (c) by mentioning the criminal nature of the investigation in conversations; and (2) the unlawful disclosure of other return information in the interviews of McCain and Chavez.  The plaintiff has not carried his summary judgment burden of presenting facts from which a reasonable jury could find that the Agents disclosed to third parties the criminal nature of the investigation of Pflum in their conversations with the third parties or in their use of certified mail return receipts only with documents sent to Pflum.[5]  Nor did the plaintiff respond to the defendant's arguments for summary judgment on the financial return disclosures during the McCain and Chavez interviews.  As the defendant's arguments and authorities for summary judgment on these particular claims are not only factually and legally meritorious on their face but are uncontested by the

---

[5]The Agents denied having told anyone that Pflum was under a criminal investigation, and the plaintiff has not effectively controverted the Agents' declarations.  Nor has the plaintiff controverted Agent Schmidt's declaration that he does not recall sending certified mail in this investigation except to the plaintiff.  The plaintiff's own motion for summary judgment does not address either claim nor offer any facts in support of them.

plaintiff, the court shall grant the defendant's motion on those claims.  The court does so summarily on the same grounds convincingly argued in the defendant's filings.  The court turns its consideration to the plaintiff's remaining claim that the Special Agents wrongfully disclosed the criminal nature of the investigation through their use of business cards.

To recover on his § 7431 action based on the use of business cards, the plaintiff must prove:  (1) that the alleged disclosure was unauthorized; (2) that the disclosure was made knowingly or negligently; and (3) that the disclosure violated § 6103.  *Fostvedt v. United States*, 824 F. Supp. 978, 983 (D. Colo. 1993), *aff'd*, 16 F.3d 416, 1994 WL 7109 (10th Cir. 1994) (Table); *Flippo v. United States*, 670 F. Supp.  638, 641 (W.D.N.C. 1987), *aff'd per curiam*, 849 F.2d 604, 1988 WL 60765 (4th Cir. 1988) (Table); *Wewee v. United States*, 2003 WL 1874756, at *2 (D. Ariz), *aff'd*, 72 Fed. Appx. 731, 2003 WL 21995419 (9th Cir. 2003).  The defendant moves for summary judgment on several grounds arguing first that the business cards disclosed only the same information found on the Agents' badges and pocket commissions which had been lawfully displayed already.  The defendant further contends the Agents' use of the CID identifier with third parties comes within the safe harbor exception

15

established in § 6103(k)(6).  Finally, the defendant maintains the Agents'

use of the identifier is protected by the good faith exception of § 7431(b)(1).

On those occasions when the business cards were personally

given to third parties during the investigation, the Agents did this only after

introducing themselves and showing their badges and pocket commissions

as required by the IRM.  Thus, the CID identifier on the Agents' business

cards did not disclose or make known[6] to the third parties any more about

the nature of their investigation than what the third parties already knew

from having seen the Agents' badges and pocket commissions.  Thus, the

use of business cards in this setting did not make known any additional

information to third parties, as to constitute a disclosure under § 6103(b)(8).

*See Haywood v. United States*, 642 F. Supp. 188, 192 (D. Kan.1986) (No §

6103(b)(8) disclosure for the employer to be told the employee's name and

social security number).

When IRS agents disclose return information during

investigations, courts have applied the safe harbor provision at §

6103(k)(6) upon meeting three requirements:

---

[6]"The term 'disclosure' means the making known to any person in any manner whatever a return or return information."  26 U.S.C. § 6103(b)(8).

16

(1) The information sought is "'with respect to the correct determination of tax, liability for tax or the amount to be collected or with respect to the enforcement of any other provision of the [Internal Revenue Code]." I.R.C. § 6103(k)(6). (2) The information sought is "not otherwise reasonably available." *Id.* (3) It is necessary to make disclosures of return information in order to obtain the additional information sought.

*DiAndre v. United States*, 968 F.2d 1049, 1052 (10th Cir. 1992) (footnote omitted), *cert. denied*, 507 U.S. 1029 (1993); *see also Payne v. United States*, 289 F.3d 377, 382 (5th Cir. 2002). The uncontroverted facts establish the first two elements, for the Agents were seeking information during a criminal tax investigation and the information was not otherwise reasonably available based, in part, on Pflum's refusal to cooperate with the investigation. There is a dispute over the third element–necessity–in the application of the exception here.

The issue of necessity for disclosing a CID identifier is one of first impression in this circuit,[7] As far as other courts having addressed this issue, their holdings are closely tied to the particular circumstances of how

---

[7]In *DiAndre v. United States*, 968 F.2d 1049 (10th Cir. 1992), the challenged disclosure was a circular letter sent on CID letterhead. With regard to the claim that the letter disclosed the criminal nature of the investigation, the district court had held "that the government was protected by the good faith exception of section 7431(b). *Accord Diamond v. United States*, 944 F.2d 431, 435-37 (8th Cir. 1991)." 968 F.2d at 1053. The appellant did not challenge that ruling on appeal, so it was not reviewed.

17

the CID identifier was used and of what was offered as proof of necessity.

For example, some courts have ruled that using a CID identifier in circular

letters is unnecessary.  *See, e.g.*, *Barrett v. United States*, 51 F.3d 475,

478-79 (5th Cir. 1995) (Relied on government's failure to offer evidence on

necessity and on agent's omission of the identifier in correspondence sent

prior to the circular letters); *Diamond v. United States*, 944 F.2d 431, 434-

35 (8th Cir. 1991) (Relied on summary judgment record that the special

agent deleted the CID identifier in later correspondence).  Distinguishing

the case law on circular letters as addressing necessity only in the unique

context of mass mailings, one court found a necessary disclosure with the

use of a CID identifier on agents' business cards distributed on a limited

basis upon direct contact and with summonses.  *Roebuck v. United States*,

1999 WL 501003 (E.D.N.C.), *aff'd*, 1999 WL 1128884 (4th Cir. 1999).   And

yet, other courts have jumped over the question of necessity in favor of

ruling on the good faith defense.  *See, e.g., Gandy v. United States*, 234

F.3d 281, 285 (5th Cir. 2000); *Comyns v. United States*, 155 F. Supp. 2d

1344, 1348-49 (S.D. Fla. 2001), *aff'd*, 287 F.3d 1034 (7th Cir. 2002)

(Issues of material fact precluded a summary judgment ruling on

necessity).

The statute does not define "necessary."  Its context is more consistent with a meaning of appropriate and helpful than with the alternative meaning of strictly essential.  *See Payne v. United States*, 289 F.3d at 389-90 (J. Garza, concurring in part and dissenting in part); *Rhodes v. United States*, 903 F. Supp. 819, 824 -825 (M.D. Pa. 1995); *cf*. 26 C.F.R. § 301.6103(k)(6)-1T(c)(1).  The uncontroverted facts establish that the Agents' use of the CID identifier on business cards in their service of summonses and personal interviews was appropriate and reasonable under the IRS policies and procedures.  The use of the business cards was limited to personal contacts and in the service of administrative summonses and was not part of any mass mailings.  The business card did not disclose any more information than what the Agents did or would have disclosed during a personal visit.  Besides being part of the information necessary for making proper contact with the designated IRS agent, the CID identifier on the business cards is necessary in the defendant's judgment for several other reasons.  The identifier on the business cards is helpful to the Agents in presenting themselves truthfully to third parties, in apprising the contacts of the seriousness and importance of a careful response to and cooperation with the investigation, in building a

19

relationship of trust and openness with potential witnesses, and in protecting all interested parties with information from which to evaluate rights, risks and responsibilities in the investigation.  *See Payne v. United States*, 289 F.3d at 389-90 (J. Garza, concurring in part and dissenting in part); *Roebuck v. United States*, 1999 WL 501003 at *3-*4.  The defendant's arguments are not only reasonable inferences from the uncontroverted facts, but the plaintiff does not refute them with any proper citations from the summary judgment record or with any persuasive legal authorities.  What the plaintiff cites as his supporting authorities involve the use of a CID identifier on mass mailings and implicate a different set of considerations on the issue of necessity.  *Comyns*, 155 F. Supp. 2d at 1351-52, *Roebuck*, 1999 WL 501003 at *3.  The defendant is entitled to summary judgment on the safe harbor provision at § 6103(k)(6).

For purposes of the following discussion, the court will assume the defendant did not prevail on the safe harbor exception.  Section 7431 provides an exception to liability with respect to an unauthorized disclosure which "results from a good faith, but erroneous, interpretation of section 6103."  26 U.S.C. § 7431(b)(1).  Courts employ an objective standard in determining whether the violation of § 6103 was in good faith.  *Payne v.*

20

*United States*, 289 F.3d at 384; *Diamond v. United States*, 944 F.2d at 435;

*Comyns v. United States*, 155 F. Supp. 2d at 1350.  Thus, agents act in

good faith "when their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known."

*Gandy v. United States*, 234 F.3d at 285.  The good faith exception in the

Fifth Circuit focuses on the premise that "a reasonable IRS agent can be

expected to know statutory provisions governing disclosure, as interpreted

and reflected in IRS regulations and manuals."  *Id.* at 286 (internal

quotation and citations omitted).  In the Eighth Circuit, the good faith inquiry

extends to whether the IRS's interpretation of § 6103 as reflected in its

handbooks and regulations was in good faith.  *Diamond v. United States*,

944 F.2d at 436.  In adopting as its precedent the district court's opinion of

*Comyns v. United States*, 155 F. Supp. 2d 1344,[8] the Eleventh Circuit

recognizes a good faith exception "where 1) the agent or agents who

disclosed tax return information in violation of § 6103 followed the relevant

---

[8]The Eleventh Circuit held:

"Although this appears to be a case of first impression in this circuit, so that this decision establishes a precedent in this circuit, it is unnecessary for us to write a full-blown opinion because the opinion by District Judge Kenneth L. Ryskamp, reported at *Comyns v. United States*, 155 F. Supp. 2d 1344 (S.D. Fla. 2001), adequately reflects the facts, the law and the reasoning that supports that holding."
*Comyns v. United States*, 287 F.3d 1034 (11th Cir. 2002).

agency regulations and/or manuals, and 2) the regulations and/or manuals followed by those agents constituted a reasonable interpretation of the law."  155 F. Supp. 2d at 1350; *see also Dean v. United States*, 330 F. Supp. 2d 1318, 1326-27 (N.D. Fla. 2004), *aff'd*, 129 Fed. Appx. 599 (11th Cir. 2005).  In the absence of any direct Tenth Circuit precedent on this issue, the court joins the *Comyns* approach as the "most desirable, for it requires both the agent himself and the agency to have made a good faith effort to follow the law."  155 F. Supp. 2d at 1350.  "The government bears the burden of proving the good-faith defense."  *Snider v. United States*, 468 F.3d 500, 507 (8th Cir. 2006) (citation omitted).

The uncontroverted facts stated above establish that the Agents followed the agency-approved procedures found in the IRM and other agency memoranda.  Upon making contact with third parties, Special Agents are to display their credentials which identify themselves as CID agents.  Special Agents are permitted to use contact cards in order to notify third parties as to whom they should contact with questions and information.  Knowing that they must display their CID badges to third parties, Special Agents would necessarily conclude they could use contact cards that identified them as CID Agents in the same way as their badges

and credentials did.  *Cf. Gandy v. United States*, 234 F.3d at 287.  Based

on these agency policies and requirements and reasonable inferences

drawn from them, the Special Agents here had a good faith belief that in

the service of administrative summonses and related third party contacts

they could identify themselves as CID agents and use business cards

which similar identifiers.  The current case law from other circuits supports

this finding and conclusion.  *See, e.g.*, *Gandy*, 234 F.3d at 286-87 ("[I]t is

clear to us that agents are authorized to display their credentials and

badges identifying them as Criminal Investigation Division agents when

interviewing a third party."); *May v. United States*, 141 F.3d 1169, 1998 WL

71545 at *2 (8th Cir.) (use of CID identifier in letters was in good faith

reliance on IRM), *cert. denied*, 525 U.S. 873 (1998); *Diamond v. United

States*, 944 F.2d at 435 (agent's use of CID identifier in signature block

accorded with the instructions found in the agent's handbook); *Dean v.

United States*, 330 F. Supp. 2d at 1327 (use of CID identifier complied with

IRS policy); *Comyns v. United States*, 155 F. Supp. 2d at 1351; *Roebuck v.

United States*, 1999 WL 501003 at *4 (E.D.N.C. 1999) (IRM entitles and

encourages agents to display credentials for identification purposes).

     The court believes the manual provisions and policies followed

by the Special Agents here constituted a reasonable interpretation of the law.  The safe harbor provision for investigations does not foreclose an agent from disclosing his or her title or office in the performance of his or her official duties.  Particularly when a law enforcement officer personally contacts someone during an investigation, it is a "strong" and "common" expectation that the law enforcement officer will display identification and badges.  *Payne v. United States*, 289 F.3d at 390 (J. Garza, concurring in part and dissenting in part).  This court agrees with Judge Garza's commonsense observation:  "In passing § 6103, Congress could not have intended to prevent IRS agents from complying with the widespread expectation that law enforcement agents show their badges and otherwise identify themselves to the people whom they interview."  *Id.*  The Court is unaware of any "case law holding that CID agents must carry separate identification without the CID description, refuse to identify themselves as CID agents, or otherwise purposefully conceal the fact that they are agents of that division."  *Comyns*, 155 F. Supp. 2d at 1351.  The IRS manual and policies reasonably interpret the law as to allow Agents to show identification and badges with the CID identifier.  It necessarily follows that the Agents here in good faith would conclude they could use contact cards

24

that identified them as CID Agents in the same way as their badges and credentials did.  Having carried its burden, the defendant is entitled to summary judgment on its good faith defense.

In his filings, the plaintiff largely relies[9] on *Barrett v. United States*, 51 F.3d 475 (5th Cir. 1995), and *Snider v. United States*, 468 F.3d 500 (8th Cir. 2006), both of which are distinguishable.  In *Barrett*, the good faith defense was denied because the IRS agent had "violated the express provisions contained in . . . the IRS manual" in sending out hundreds of letters to third-party patients of the taxpayer physician when the letter was not approved by the Chief of the Division, when the letter was mailed to third parties who were not patients during the years under investigation, and when the body of the letter stated the physician was under investigation by the CID.  51 F.3d at 480.  The court concluded that a reasonable IRS agent would not have violated these express provisions of the IRS manual.  *Id.*  Unlike *Barrett*, the Agents here did comply with IRS manuals and policies in their use of the CID identifier on business cards.

---

[9]The plaintiff argues in his motion for summary judgment that *Barrett* "is precisely on point with the facts and law in the instant matter."  (Dk. 69, p. 17).  The plaintiff cites *Snider* as holding that the good faith provision "did not insulate the United States from liability after a special agent admittedly told witnesses he was a CI special agent conducting an investigation of the plaintiffs."  (Dk. 107, p. 3).

25

The court in *Snider* held that the Agents' use of their badges to identify themselves as criminal investigators "is not prohibited by statute and does not constitute a disclosure of return information."  468 F.3d at 507.  The government in *Snider*, however, failed to prove as part of the safe harbor provision that it could not have obtained the information without the disclosure of the taxpayer's identity.  Thus, the holding in *Snider* does not favor the plaintiff on the lawfulness of an agent using his badge to identify himself and addresses only a disclosure as to the fact of the investigation and not its nature.  The plaintiff's claim and evidence does not bear many similarities with those in *Snider*, and of those resemblances that do exist they are of little note because of the Eighth Circuit's cursory analysis of the safe harbor provision, the good faith defense, and the current body of case law interpreting and applying both.

IT IS THEREFORE ORDERED that the defendant United States of America's motion for summary judgment (Dk. 102) is granted;

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (Dk. 69) is denied.

Dated this 6th day of June, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge